| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:21-CR-39(1) |
| | § | |
| MICHAEL JAMES SHAW | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Michael James Shaw's ("Shaw") *pro se* Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#49), filed on February 13, 2025. The Government filed a response in opposition (#53). United States Probation and Pretrial Services ("Probation") reviewed the filings and recommends denying the motion. Having considered the motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be dismissed or, in the alternative, denied.

I.    Background

On April 7, 2021, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a one-count Indictment (#2) charging Shaw with Possession with Intent to Distribute 50 Grams or More of "Actual" Methamphetamine. On June 24, 2021, Shaw pleaded guilty to Count One of the Indictment pursuant to a written plea agreement. On October 19, 2021, the court sentenced Shaw to a term of 235 months' imprisonment, followed by a five-year term of supervised release, in accordance with the terms of the plea agreement (#31). He appealed his conviction and sentence, but it was dismissed as frivolous by the United States Court of Appeals for the Fifth Circuit on June 10, 2022

(#44).    Shaw, age 45, is currently housed at United States Penitentiary Pollock ("USP Pollock"), located in Pollock, Louisiana.  His projected release date is March 6, 2038.

The nature and circumstances of Shaw's offense of conviction are summarized, as follows.  On October 6, 2020, Shaw sold 1.13 grams of methamphetamine (actual) to a confidential informant in a controlled buy at his residence in Port Neches, Texas.  Later that day, officers executed a search warrant at his residence and discovered the following items during the search:  454.10 grams of methamphetamine (actual), 5.09 grams of cocaine base, 147.20 grams of marijuana, 2 paper tablets of LSD, several oblong white pills weighing 39.80 grams, and 37.60 grams of a brown powdery substance, all located inside an upholstered chair in the living room.  A Kel-Tec .380 pistol, a Taurus 9mm pistol, a Colt .38 revolver, and an Armi Tanfoglio .25 caliber pistol were all located inside a safe in the master bedroom, and drug scales and various tools and electronic devices were located in a bedroom that was secured with a padlock.  Shaw admitted that he had supplied approximately 4 kilograms of methamphetamine to an individual from Dallas from whom he received the Taurus pistol as partial payment for a drug debt, that he had received the Colt revolver from another individual who had supplied him with methamphetamine, heroin, and cocaine, and that he had received the other 2 pistols from another individual in exchange for methamphetamine.

Police received reports on February 10, 2021, about Shaw's distributing methamphetamine from a residence in Port Arthur, Texas, where he was observed by surveillance entering and leaving several times.  A search of the residence led to the

2

discovery of 4.60 grams of methamphetamine, 7.30 grams of broken pills suspected to be amphetamine, 4.30 grams of synthetic marijuana, 2 tabs of LSD, 1 gram of marijuana, broken pills suspected to be Xanax and hydrocodone, a meth pipe, and a loaded Taurus .38 caliber revolver inside the residence. The drugs were all packaged in separate plastic bags inside a Crown Royal bag found on top of a table, and the revolver was on the floor next to the table.

Shaw has an extensive criminal history which includes prior convictions for possession of a controlled substance, driving with a suspended license (2x), failure to identify (3x), burglary of a building (2x), unauthorized use of a vehicle, theft (8x), trespassing, criminal mischief, and aggravated assault with a deadly weapon, resulting in the accumulation of 20 criminal history points. He also failed to comply with a previous term of probation. Shaw has a history of mental health problems as well as a long history of poly-substance abuse beginning at the age of 13.

Shaw moves for compassionate release claiming that his parents have become incapacitated and that he is the only available caregiver for them. Shaw states: "My parents are very ill and need my support." He does not indicate the nature of their illnesses or provide any medical documentation regarding their purported incapacitation.

II.    Compassionate Release

A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord*

3

*Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c).  Section

3582(c)(1)(A) embodies a narrow exception to a conviction's finality.  *See Rutherford v.*

*United States*, Nos. 24-820 & 24-860, ___ U.S. ___, 2026 WL 1485535, at *3 (U.S. May

28, 2026).  This statute gives the court discretion, in certain circumstances, to reduce a

defendant's term of imprisonment.  The First Step Act of 2018 ("the Act"), Pub. L. No.

115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently

provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities."). The First Step Act "opened a new procedural route for seeking a reduction" by allowing the prisoner to "request that the BOP file a motion on his behalf, and, if it declines or fails to do so within 30 days, he may file a motion himself." *Rutherford*, 2026 WL 1485535, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)).

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Rutherford*, 2026 WL 1485535, at *4; *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their

own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are:

(1)    the medical circumstances of the defendant;

(2)    the age of the defendant;

(3)     the family circumstances of the defendant;

(4)    whether the defendant was a victim of abuse while in custody;

(5)    other reasons similar in gravity to those previously described; and

(6)    an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)    the defendant must have exhausted his administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

    B.    <u>Exhaustion of Administrative Remedies</u>

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule."  *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived."  *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the

Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

The defendant bears the burden of proving that he has exhausted his administrative remedies before filing a motion for compassionate release. *United States v. Garcia-Martinez*, No. EP-24-CR-0764-DCG-1, 2025 WL 2427619, at *2 (E.D. Tex. Aug. 18, 2025); *accord United States v. DeJean*, No. 2:18-cr-120, 2025 WL 3687269, at *3 (E.D. La. Dec. 19, 2025); *United States v. Mahaffey*, No. 17-54-DLB-MAS-1, at *2 (E.D. Ky. July 3, 2025); *United States v. Escobar*, No. 15-CR-150-2 (ARR), 2024 WL 2111573, at *2 (E.D. N.Y. May 10, 2024); *United States v. Avelar*, No. 3:16-cr-0351-B-2, 2022 WL 17096173, at *2 (N.D. Tex. Nov. 20, 2022); *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at *1-2 (E.D. La. Aug. 19, 2022). Without evidence that the defendant requested compassionate release from the warden and that thirty days have passed since the warden received or denied the request, the defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement. *Avelar*, 2022 WL 17096173, at *2 (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter) (citing *United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 4432852, at *2 (N.D. Tex. July 31, 2020)).

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021); *United States v. Williams*, 987 F.3d

700, 703 (7th Cir. 2021); *United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)).  "It would disrupt the 'orderly system for reviewing compassionate-release applications' and 'incentivize[] line jumping' to permit defendants to present grounds for compassionate release to the Court that the BOP had not already received the opportunity to consider."  *United States v. Silcox*, No. 3:17-CR-134-TAV-HBG-1, 2020 WL 4341758, at *2 (E.D. Tenn. July 28, 2020) (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)).  Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent.  *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *United States v. Reeves*, No. 3:18-cr-313-B, 2020 WL 3895282, at *2 (N.D. Tex. July 10, 2020);  *United States v. Samak*, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); *see Gonzalez*, 849 F. App'x at 117.

Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release."  *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord DeJean*, 2025 WL 3687269, at *3; *Mendoza-Garibay*, 2023 WL 307459, at *2.  "It is well-settled that the exhaustion requirement is not satisfied when the defendant previously sought administrative relief *on a different ground* than the ground presented to the district court."  *DeJean*, 2025 WL 3687269, at *3.  Successive compassionate release motions must independently satisfy the exhaustion requirement.  *United States v. Ford*, No. 1:16-CR-19-HAB, 2021 WL 5980368, at *2 (N.D. Ind. Dec. 16, 2021).  "If

a prisoner were only required to make one request to the BOP and forever after [be] able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined." *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021); *accord Rivas*, 833 F. App'x at 558; *Ford*, 2021 WL 5980368, at *2.

In this instance, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement. The Government contends that "Shaw has not met any of the statutory requirements." In his motion, Shaw claims that he submitted a request for compassionate release to the warden on August 2, 2024. He does not identify the facility where he was housed at the time. Nonetheless, as the Government points out, there is no evidence before the court that Shaw, in fact, submitted *any* request for compassionate release to the warden of the facility where he was housed at the time or to any other BOP personnel. Nor does Shaw provide any evidence that he gave the BOP the information necessary to investigate the grounds for relief he now raises. Shaw did not furnish the court a copy of any request he purportedly made to the warden or to other BOP personnel seeking compassionate release, and no such request appears in the case file. Probation affirms that Shaw did not submit a timely request to the warden, which was confirmed by a BOP supervisory attorney, who advised Probation that "there is no record of a reduction in sentence request being submitted to the warden of FMC Lexington," where Shaw was housed at the time he signed his motion for compassionate release on December 15, 2024. Absent evidence of a verifiable request for compassionate release to the warden, Shaw cannot prevail.

The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see*

*United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" (quoting *Franco*, 973 F.3d at 468)); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language:  all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

In any event, because Shaw presents no evidence that he submitted a request to the warden of the facility where he was housed at the time he submitted his Motion for Compassionate Release or to any other warden or BOP personnel raising the claims he now asserts in his motion for compassionate release, he has not met his burden of proof to establish that he has exhausted his

administrative remedies.  Therefore, due to his failure to exhaust his administrative remedies before filing the current motion, the court lacks the authority to grant the relief Shaw requests.

III.    Conclusion

In sum, Shaw has not satisfied his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  Shaw has failed to show that he exhausted his administrative remedies before seeking compassionate release. Therefore, in accordance with the foregoing analysis, Shaw's *pro se* Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#49) is DISMISSED, or in the alternative, DENIED.

SIGNED at Beaumont, Texas, this 8th day of June, 2026.

_____

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE